No. 63,700

In the Matter of the Marriage of DONALD EUGENE SOMMERS, *Appellant*, and TEPIN SOMMERS, *Appellee*.

(792 P.2d 1005)

Opinion filed May 25, 1990.

*Gary Ellis*, of Manhattan, argued the cause and was on the briefs for appellant.

*Gregory K. Barker*, of Barker and Collett, of Junction City, argued the cause, and *Michael P. McKone*, of McKone, Unruh & Graham, Chrtd., of Junction City, was with him on the briefs for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a divorce action in which the petitioner husband appeals from the division of property, award of maintenance, and allowance of attorney fees made by the trial court. The Court of Appeals affirmed the trial court in an unpublished opinion pursuant to Supreme Court Rule 7.042 (1989 Kan. Ct. R. Annot. 35), said opinion being filed on November 22, 1989.

We granted review to determine the issue of whether it was proper for the trial court to admit evidence of fault and to consider fault in the division of property and awards of maintenance and attorney fees where the divorce was sought and granted on the ground of incompatibility (K.S.A. 60-1601[a][1]).

The parties, Donald and Tepin, were married on May 16, 1970. On March 15, 1971, and on September 14, 1972, respectively, the parties' two children were born. The trial court granted a divorce on the ground of incompatibility on February 13, 1989. The balance of the issues were taken under advisement. On March 16, 1989, the trial court entered its memorandum opinion which provided, *inter alia*:

1. joint custody of the children with Tepin to be the custodial parent;
2. child support to be paid by Donald in the amount of $411 per month per child;
3. Tepin to be awarded 45 percent of Donald's retirement benefits with the U.S. Postal Service;
4. Tepin to be awarded the family residence subject to the indebtedness thereon;
5. Tepin to be awarded maintenance of $500 per month for 100 months;
6. Donald to pay the marital indebtedness other than that on the residence and, the motor vehicles of Tepin and their son, Alan, and to Montgomery Ward; and
7. Donald to pay $1,000 on Tepin's attorney fees.

Over Donald's objection, evidence was admitted that he was having an extramarital affair with a named individual. In its March 16 memorandum opinion, the trial court stated, in part:

"The Court specifically finds that the primary cause of the destruction of the marriage was the Petitioner's involvement with [name deleted], which the Court finds relevant to the issue of maintenance. The Court finds that the Petitioner entered into this relationship, irrespective of any fault on part of the Respondent. The Court further finds that an award of maintenance should be made to the Petitioner not only because of this factor, but because of the totality of all the factors in this case, including, but not limited to: the length of marriage (19 years); the past, present, and future income producing ability of the parties, which the evidence clearly indicates is favorable to the Petitioner; the division of the property and division of debts awarded to the Respondent; and the need to adequately provide for the children.

. . . .

"In determining this division of property, the Court has taken into account the ages of the parties, the duration of the marriage, the property owned by the parties, their present and future earning capacities, the time, source and manner of acquisition of property, family ties and obligations, the allowance of maintenance or lack thereof, dissipation of assets, and such other factors this Court considered necessary all as required by K.S.A. 1988 Supp. 60-1610(b)(1).

"Kansas law, of course, does not require equal split of all property acquired during marriage but rather gives the Court discretion to consider all the property to arrive at a just and reasonable division.

. . . .

". . . Most importantly, and first and foremost, is that the Respondent, in this case, has been married to the Petitioner for many years, was a good and responsible housewife, and contributed to the accumulation of the marital property. The Petitioner in this case now decides, after having taken up with another woman, specifically [name deleted], that he no longer desires to live with, support, and be a good husband to the Respondent in this case.

"While this Court recognizes that this is a no-fault divorce case, nonetheless, there is still some room in these cases for fault, the fault lies with the Petitioner and that matter can appropriately be taken into account by the Court in making an equitable division of property and the Court has done so."

K.S.A. 60-1601(a) provides:

"The district court shall grant a decree of divorce or separate maintenance for any of the following grounds: (1) Incompatibility; (2) failure to perform a material marital duty or obligation; or (3) incompatibility by reason of mental illness or mental incapacity of one or both spouses."

K.S.A. 1989 Supp. 60-1610(b)(1) provides in pertinent part:

"In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property owned by the parties;

their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; *and such other factors as the court considers necessary* to make a just and reasonable division of property." (Emphasis supplied.)

Donald contends that the trial court's admission of evidence of fault (his alleged marital infidelity) and the consideration thereof in determining the financial aspects of the dissolution of the marriage was improper and contrary to the concept of incompatibility as a no-fault ground for divorce. It should be noted that Donald has consistently denied the existence of the alleged marital infidelity. Tepin contends that such evidence was properly considered as it falls within the purview of the non-specified "such other factors" phrase of K.S.A. 1989 Supp. 60-1610(b)(1).

Maxwell, *In the Best Interests of the Divided Family: An Analysis of the 1982 Amendments to the Kansas Divorce Code,* 22 Washburn L.J. 177 (1983), contains an excellent discussion of the 1982 amendments to the Kansas Divorce Code. In her analysis of the amendments to K.S.A. 60-1601(a), Professor Maxwell states:

"As previously mentioned, incompatibility is now listed first because the drafters believe incompatibility is the cause of most divorces and thus the preferred ground. The second ground, failure to perform a material marital duty or obligation, is the only ground for divorce or separate maintenance that assigns fault. This ground is not intended as a new ground, but rather summarizes previous fault grounds for divorce—adultery, extreme cruelty, habitual drunkenness, gross neglect of duty, and conviction of a felony that results in imprisonment subsequent to the marriage.

"The language of the new fault ground was a compromise position between FLAC [Family Law Advisory Committee] members who wanted to eliminate fault completely and members who believed fault still served a useful function in divorce litigation. The members who favored fault believed there were situations, such as cases of severe physical abuse, that warranted a finding of fault. There was also concern that eliminating fault entirely as a ground for divorce might be too drastic a change, and unacceptable to the public.

"The opponents of fault divorce believed spouses who used fault grounds were rarely persons who truly had been innocent of contributing to the failure of the marriage. They said fault was used most often by vindictive spouses seeking to publicly humiliate or punish their partners. If incompatibility was the only ground for divorce, less animosity would result because the pleadings could not be used by spouses to accuse the other of extreme cruelty, habitual drunkenness or other fault behavior. Opponents of fault divorce also contended incompatibility would not restrict the parties

from presenting evidence of fault-type behavior because it would be relevant in proving incompatibility. The judge would continue to be apprised of the same evidence as in a fault divorce, but the court's task would be to determine whether the parties were incompatible, rather than which spouse should be blamed for the marital failure.

"FLAC resolved the differences of opinion in several ways. First, incompatibility was listed as the preferred ground for divorce, recognizing that truly fault-based divorces, with an innocent and a guilty spouse, were rare. Second, the language of the new fault ground, 'failure to perform a material marital duty or obligation,' left out references to specific behavior. Thus, pleadings and findings of the court could be relatively innocuous, reducing vindictive motives and acrimony. Finally, by retaining one general fault ground, the law preserves for courts the power to find a spouse responsible for the marital breakdown if the facts strongly indicate blameworthy behavior.

"The FLAC members also discussed whether 'failure to perform a material marital duty or obligation' should be specifically defined. The decision was made to use the phrase as a summary of the old fault grounds." 22 Washburn L.J. at 182-83.

In the case before us, much evidentiary time was spent in seeking to prove the alleged infidelity. The "other woman" was called as a witness. Tepin proved to the court's satisfaction that her claims of marital infidelity were true. The trial court specifically stated it considered marital infidelity on the part of Donald in resolving the financial matters. The clear inference is that the trial court penalized Donald for his fault in making its findings relative to the financial aspects involved in the dissolution of the marriage. But for his fault, the resolution of the financial aspects would, presumably, have been more favorable to Donald. Was this error? We believe so.

The Maxwell article previously referred to traces the amendments to K.S.A. 60-1610 as follows:

"The new section on the division of property does very little to change the status of the law. The main addition to the statute is the incorporation of factors the court is required to consider in dividing the property. The factors include:

'the age of the parties; duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of the property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property.'

These factors were not included in the original proposal from the Judicial Council, but were added by the members of the House Family Law Subcommittee. Most of the factors are found in Kansas cases; therefore, this addition codifies case law.

"The statute differs from case law in two respects, however. First, fault was a factor specifically listed in the cases, but it is not listed in the new code. Second, dissipation of assets was added to the statutory list, but this factor was not found in the cases. These two differences were the result of a compromise between members of the House and the Senate, who disagreed on the original proposal that stated the court should divide the property 'without regard to marital fault.' The House members believed certain types of marital fault were relevant to division of the property. In particular, some legislators argued dissipation of assets and spousal abuse should be considered by the court in dividing the property. Although the Senate version of the bill incorporated dissipation of assets as a relevant factor, the senators supported the original proposal which specifically prohibited the court from considering marital fault in dividing the property. The senators supported the position of the original drafters that marital fault is not relevant to the division of assets because most marriages do not have an innocent and a guilty party. The members of the Senate believed fault should be excluded to maintain the intent of the drafters to reduce fault in domestic cases.

"Although it was the consensus of the House members that marital indiscretions were irrelevant to property division, they were unwilling to prohibit the court from considering extreme cases of marital fault, such as spousal abuse, in dividing the property. As a compromise, the conference committee determined that fault would not be listed specifically as a factor 'the court *shall* consider,' but could be considered with 'such other factors as the court considers necessary to make a just and reasonable division of the property.' Therefore, the legislative intent can be interpreted as disapproving the use of fault or marital misconduct in dividing the property unless the misconduct is extreme." 22 Washburn L.J. at 225-27.

We conclude that in domestic relations actions it was the legislative intent that, in all but extremely gross and rare situations, financial penalties are not to be imposed by a trial court on a party on the basis of fault. There is difficulty in establishing rigid rules relative thereto. For purposes of consideration of the financial aspects of the dissolution of a marriage, the term fault must be confined to a term of art relative to a ground for dissolution of the marriage and penalties arising therefrom. Certain conduct might be a fault ground and also be a circumstance properly to be considered in making a determination relative to financial matters. For illustration, let us say that because of the

husband's mental abuse of the wife she is so emotionally impaired that her earning capacity is affected. Certainly, the court should consider this in its determination of a fair and equitable award. The court, in such circumstances, is not imposing a penalty for fault but is considering the circumstances of the parties as they exist and making its award based on such existing circumstances and the likely future results arising therefrom. For another example, let us say that each party is requesting the court to award the family dog to him or her. Evidence that one spouse has cruelly abused the dog in the past and only seeks it to further hurt the other spouse, who has great affection for the animal, should certainly be presented to the court and considered by the court in its division of property. Again, such evidence is not evidence of fault as a term of art, but is evidence necessary to the making of an appropriate division of property. For a final example, let us say we have a physician who because of alcoholism or drug abuse is on a downward professional spiral. The physician's income is high now, but the circumstances show that this income level is not likely to continue. The trial court should have this information before it. It might well conclude that the physician's future ability to pay adequate maintenance and child support is highly questionable and that it would be more provident to award a greater than usual share of the marital property to the custodial spouse. Again, such action would not be a penalty for fault, but rather would be based upon a realistic evaluation of the parties' circumstances, future income, and needs.

It is difficult to conceive of any circumstances where evidence of marital infidelity would be a proper consideration in the resolution of the financial aspects of a marriage. Consideration of such evidence could result only on a decision of whether or not to impose a penalty for such conduct, as it does not relate to the present or future financial circumstances of the parties or the award of any particular property.

We believe that this interpretation of K.S.A. 1989 Supp. 60-1610(b)(1) is consistent with its language that the court should, in making its division of property, consider "such other factors as the court considers necessary to make a just and reasonable division of property," and the legislative history of its enactment. Fault, as a term of art, is not to be considered in the determi-

nation of the financial aspects of the dissolution of the marriage, nor should a penalty be imposed as a result of such consideration. The only exception would be some rare and unusual situation where a party's conduct is so gross and extreme that failure to penalize therefor would, itself, be inequitable.

This interpretation should also be consistent with the legislative intent that marriage dissolutions occur with minimal hostility and vituperation. The decision to seek a divorce on the grounds of incompatibility or on fault should not be made on the basis that an allegation of fault might result in a party being awarded a greater share of the parties' accumulated hoard of nuts or a lesser share of accumulated debts.

We conclude that the trial court erred in admitting evidence of fault (Donald's alleged infidelity) and in considering the same in its resolution of the financial aspects of the dissolution of the marriage. Accordingly, the case must be remanded for redetermination of these matters without consideration of fault. Such holding renders moot a number of the issues on appeal relative to particular aspects of the award made. Two of the issues may well arise again on remand and should, accordingly, be discussed briefly herein.

Tepin operates a beauty salon. The trial court determined that the business had minimal value as it was primarily dependent upon the personal services performed by Tepin herself. No professional appraisal of the shop's market value was offered. Donald testified the business was worth $25,000 based on an annual net income of approximately $20,000. We find no error or abuse of discretion in this regard based upon the record herein.

Donald further argues that the trial court erred in awarding Tepin a portion of Donald's vested interest in retirement benefits from the U.S. Postal Service, as it had no authority to do so. K.S.A. 23-201(b) provides:

"All property owned by married persons, including the present value of any vested or unvested military retirement pay, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at

the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."

The reference to retired military pay in K.S.A. 23-201(b) was added to the statute following the decision in *Grant v. Grant*, 9 Kan. App. 2d 671, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984). See L. 1987, ch. 120, § 1. In *Grant*, the Court of Appeals held that military retirement pay did not have a present value which becomes part of the marital property divisible at divorce. 9 Kan. App. 2d 671, Syl. ¶ 5.

The language of K.S.A. 23-201(b) appears to be inclusive rather than exclusive. There is no logical reason why one type of retirement benefits for federal services should be treated differently from another. We conclude that K.S.A. 23-201(b) is broad enough to include retirement benefits from the U.S. Postal Service and that the trial court had authority for its consideration thereof.

The judgment of the Court of Appeals is reversed. The judgment of the district court, as to the award of the division of property, maintenance, and attorney fees herein, is reversed, and the case is remanded for further proceedings consistent with this opinion.

SIX, J., concurring and dissenting: I concur in the result reached by the majority. I dissent from syllabus paragraphs two and three and from the associated portions of the opinion.

Under the facts of the instant case the alleged ground for the divorce was "incompatibility." K.S.A. 60-1601(a)(1). "Failure to perform a material marital duty or obligation," the only remaining "fault" ground, is not an issue in this case. K.S.A. 60-1601(a)(2). I agree that fault should not have been considered.

My disagreement with the majority arises from the following observations in the opinion:

"We conclude that in domestic relations actions it was the legislative intent that in all but extremely gross and rare situations, financial penalties are not to be imposed by a trial court on a party on the basis of fault."

and:

"Fault, as a term of art, is not to be considered in the determination of the financial aspects of the dissolution of the marriage, nor should a penalty be imposed as a result of such consideration. *The only exception would be*

*some rare and unusual situation* where a party's conduct is *so gross* and *extreme* that failure to penalize therefor would, itself, be inequitable." (Emphasis added.)

The majority reaches beyond the factual perimeters of the case at bar.

When an allegation of fault (failure to perform a material marital duty or obligation) is involved in the case, the trial court should have broader discretion in resolving the parties' financial affairs than that extended by the majority.

K.S.A. 60-1601(a)(2) permits fault to be an issue as a divorce ground. Commentators have stated that the current failure to perform a material marital duty or obligation is the substitute for the former fault grounds of extreme cruelty and gross neglect of duty, adultery, habitual drunkenness and conviction of a felony that results in imprisonment subsequent to marriage. See, Elrod, Kansas Family Law Handbook 10-7 (1983); Maxwell, *In the Best Interests of the Divided Family: An Analysis of the 1982 Amendments to the Kansas Divorce Code,* 22 Washburn L.J. 177, 182 (1983).

K.S.A. 1989 Supp. 60-1610(b)(1) sets out the factors the trial court is required to consider in dividing property. The factors codify our prior case law. "Fault," which was specifically stated as a factor in our cases, *Parish v. Parish,* 220 Kan. 131, 134, 551 P.2d 792 (1976), was not listed in the statute.

The action of the legislature in 1982, effective January 1, 1983, represented a major emphasis directed toward familial and socioeconomic considerations rather than fault or punitive considerations. See Nugent, *Some Thoughts and Approaches to the New Divorce Code,* 6 J.K.T.L.A. 21 (No. 4) (1983).

K.S.A. 1989 Supp. 60-1610(b)(1)(C) does include, however, a general provision granting the trial court discretion to consider "such other factors as the court considers necessary to make a just and reasonable division of property." It is this residue of discretion that allows the trial court to consider the issue of fault in a K.S.A. 60-1601(a)(2) "failure to perform a material marital duty or obligation" case.

In a post-January 1, 1983, divorce case, we acknowledged with approval the eight items the trial court should consider in determining a just and reasonable division of property. *Clark v.*

*Clark,* 236 Kan. 703, 707, 696 P.2d 1386 (1985) (included, as item [7], was "the question of fault when determined"). The *Clark* divorce was granted May 13, 1983.

I agree with the majority that the absence of fault from the marriage termination scene would have a salutary effect on domestic relations actions; however, I do not believe that the legislature intended to reduce the scope of trial court discretion in a K.S.A. 60-1601(a)(2) fault case as narrowly as does the majority.

If in a future case, a petition or counter-petition alleges "failure to perform a material marital duty or obligation" pursuant to K.S.A. 60-1601(a)(2), the impact, if any, of fault on the division of property should be left to the trial court's discretion.

The legislative choice of not specifically listing fault in K.S.A. 1989 Supp. 60-1610 indicates the legislature's intent to reduce its importance in property division. Nevertheless, I would not be as restrictive as the majority. The fault limitation decision the majority makes in this case should be made, if it is to be made, by the legislature.

MILLER, C.J., and LOCKETT, J., join in the foregoing concurring and dissenting opinion.